IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 2:23-cr-44
)
DENZEL AKEEM LOFTIN, )
)
Defendant. )

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and E. Rebecca Gantt, Assistant U.S. Attorney, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines").

The PSR determined the defendant's advisory guidelines range as life, resulting from a total offense level of 45 and a criminal history category of VI. There is one unresolved objection to the Presentence Investigation Report ("PSR"), which is the parties' joint objection to the defendant not receiving credit for acceptance of responsibility. Should that objection be sustained, the defendant's total offense level would be 42 and his revised advisory guidelines range would be 360 months to life.

The defendant trafficked two runaway girls, one as young as 14 years old, and required them to engage in commercial sex acts at his direction. He also inflicted physical violence and himself had sex with his victims. These acts are the last in a consistent history of violence and disregarding the law, as reflected in the defendant's extensive criminal history. Considering the applicable sentencing factors under 18 U.S.C. § 3553(a) and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government submits that a sentence of imprisonment of 360 months

would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I. Procedural Background

On February 7, 2023, the defendant was charged via criminal complaint with attempted sex trafficking of a minor by force, fraud or coercion, in violation of 18 U.S.C. § 1591(a)(1), and obstruction of a sex trafficking investigation, in violation of 18 U.S.C. § 1591(d). ECF Nos. 1 & 2. The defendant had his initial appearance on February 9, 2023. ECF No. 6. He waived his rights to preliminary and detention hearings, and was ordered detained pending trial. ECF Nos. 10 & 11.

On April 11, 2023, the grand jury returned a five-count indictment charging the defendant with sex trafficking by force, fraud and coercion, in violation of 18 U.S.C. § 1591(a)(1) (b)(1) (Count One), sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2) (Count Two), attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2) (Count Three), production of a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) (Count Four), and obstruction of a sex trafficking investigation, in violation of 18 U.S.C. § 1591(d) (Count Five). ECF No. 14.

On June 26, 2023, the defendant pleaded guilty before United States Magistrate Judge Douglas E. Miller to Count Two. ECF Nos. 27 & 28. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government agreed to recommend a sentence no higher than 360 months of imprisonment. ECF No. 28 at 3. Judge Miller accepted the defendant's plea and filed a Report and Recommendation, to which neither party objected. ECF Nos. 27 & 31. On July 11, 2023, the Court entered an order accepting the defendant's plea and adjudged him guilty. ECF No. 32.

On October 18, 2023, the U.S. Probation Office filed a PSR which calculated the defendant's total offense level as 45 and his criminal history category as VI, resulting in a guidelines range of life. ECF No. 34.

**II. Objection to the Presentence Investigation Report**

The only outstanding objection[1] to the PSR is the defendant's objection to not receiving a two-level offense level reduction for acceptance of responsibility under USSG § 3E1.1, which objection the United States joins. "The defendant bears the burden by the preponderance of the evidence of showing 'he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct,' and this 'does not flow automatically from a guilty plea." *United States v. Carver*, 916 F.3d 398, 404 (4th Cir. 2019) (quoting *United States v. May*, 359 F.3d 683, 693 (4th Cir. 2004)); *see also United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007). Here, the Probation Office denied acceptance because the defendant obstructed justice by smashing his phone to the ground in front of law enforcement officers on November 3, 2022. SOF ¶ 19; PSR ¶ 23.

While the United States understands that guidelines commentary state that conduct resulting in an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," USSG § 3E1.1 cmt. n. 4, the Fourth Circuit has emphasized that "[t]he decision to grant an acceptance-of-responsibility reduction often depends on the actions of the defendant following his or her arrest or plea." *United States v. Dugger*, 485 F.3d 236, 240 (4th Cir. 2007); *see also United States v. Bolton*, 858 F.3d 905, 915 (4th Cir. 2017) (noting that the Fourth Circuit has "upheld denials of reductions for acceptance of responsibility where . . . the defendant continues criminal activity after apprehension, indictment, or guilty plea").

[1] While the PSR notes two additional objections by the defendant, on October 19, 2023, the defendant's counsel informed undersigned counsel that she is withdrawing those objections.

Here, the United States submits that the defendant should be credited with acceptance of responsibility because his obstructive conduct with regards to his phone was pre-arrest, and also predated his initial federal charges via criminal complaint by three months. Since then, he has accepted responsibility for an extraordinarily serious crime carrying a penalty of up to life in prison. He also expressed remorse and regret to the Probation Officer. PSR ¶ 22.

## III. Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility Should the Court Sustain the Parties' Objection

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. USSG § 3E1.1(b). Accordingly, if the Court sustains the parties' objection to the defendant not receiving a two-level reduction for acceptance of responsibility, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

If the defendant received a three-point reduction for acceptance of responsibility, his Total Offense Level would be 42, and his advisory guidelines range would be 360 months to life.

## IV. Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not

presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351–52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017). The Fourth Circuit considers "[a] within-Guidelines range sentence [as] presumptively reasonable." *United States v. White*, 850 F.3d 667, 674 (4th Cir. 2017).

**V. The Statutory Sentencing Factors**

A. <u>The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))</u>

This investigation began when the defendant started chatting online with an FBI undercover agent in Arizona whom he believed to be a 17-year-old girl living out of state. Over the next month and a half, he repeatedly sought to bring her to Hampton Roads so he could be her pimp. He offered to buy her a bus ticket, and told her that he would post an ad for her before she came so that when she arrived, she could give the defendant $1,000. On October 12, 2022, he posted a sex trafficking ad offering to "cum f*** me and lick this juicy pussy," which he sent to the undercover agent and noted he had just taken a "risk" in posting her. Later, he posted another

ad for the undercover agent with rates of up to $350 for an hour of commercial sex. He told the undercover agent that if her "date" wanted to have sex without a condom, he would need to pay her $1,000.

Meanwhile, the FBI in Norfolk received information from a human trafficking task force in Denver, Colorado that Juvenile-1, a 14-year-old girl who had been reported missing from that state, was observed in sex trafficking ads in Hampton Roads. An undercover officer set up a "date" involving sexual acts with Juvenile-1 and another female for $350. Juvenile-1 was specifically offered for oral sex, and the other female for anal sex. Juvenile-1 arrived at the predetermined location along with Juvenile-2, a missing 17-year-old girl from Missouri, and Emerita Moore, who was the defendant's "bottom." Shortly prior to the "date," surveillance located the defendant at a hotel in Virginia Beach with Juvenile-1, Juvenile-2, and Moore. Phones were seized from the three females, and a review of those devices revealed significant evidence of sex trafficking. Not only that, but one phone had a recording of Juvenile-2 performing oral sex on the defendant. The defendant used physical violence to further the sex trafficking scheme. For instance, he hit Juvenile-2 in the mouth for "talking back."

Defendant's sex trafficking was already well underway by the time Juvenile-1 and Juvenile-2 arrived in Hampton Roads. A prior interview of Moore in July 2022, when police responded to a report of an assault, revealed that Moore began working for the defendant in 2021. She reported that he advertised her for commercial sex and confiscated her proceeds. In October 2022, she reported that the defendant often used physical violence.

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The defendant is 33 years old and was born in Chesapeake, Virginia. His parents were initially married, but divorced when the defendant was an adult. His parents were separated during

his upbringing, and he was raised principally by his paternal grandmother and his father as his mother engaged in substance abuse. He reports that his basic necessities were provided, but that his father and grandfather would sometimes disciplined him with physical abuse. The defendant maintains a good relationship with his father, who is retired and lives in Chesapeake. The defendant also reports having a good relationship with his mother, who is employed as a laborer and lives in Georgia. The defendant has two older sisters, one of whom is a contractor in Atlanta and the other of whom is a manager in Norfolk. The defendant also has a younger brother who is serving in the United States Air Force. He reports that his siblings remain supportive of him. The Probation Officer was unable to verify or corroborate any of this familial information.

The defendant has never been married and has two daughters. One is 13 years old and lives in Hampton Roads. She is in the temporary custody of the defendant's aunt because the child's mother has been hospitalized for several months. The defendant has an outstanding child support obligation exceeding $10,000. The other daughter is eight months old and lives in California with her mother. The defendant has never met her because she was born after his arrest.

The defendant reports dropping out of his high school in Chesapeake during his senior year. He obtained his GED in 2010 and reports attending some college at Tidewater Community College in 2011. The defendant reports limited past employment, including working off and on as a mechanic's assistant at local trucking businesses between 2008 and 2022. The Probation Officer was not able to verify any employment history.

The defendant is in overall good physical health, reporting only some limited mobility due to a prior gunshot wound to the shoulder. He has been diagnosed with several mental health disorders, as documented in paragraphs 100 and 101 of the PSR. He has some history of substance abuse, including opioids, cocaine, and marijuana.

The defendant's criminal history spans eleven pages of the PSR, resulting from convictions in multiple states and local jurisdictions, and he has the highest available criminal history category of VI. He has been convicted of felonies on approximately six occasions. Most notably for this sentencing, his criminal history is replete with a consistent pattern of inflicting physical violence. For instance, he has been convicted on three occasions of assault and battery of a family member, in 2011, 2013, and 2020, on of whom was the mother of his oldest child. Another victim sought an emergency protective order. In addition to the assault and battery convictions, in 2012 the defendant was convicted of assault after he struck a correctional officer in the eye. And in 2014, he was convicted of malicious wounding. That victim encountered the defendant when he responded to an Internet advertisement. The defendant held the victim up at gunpoint demanding his possessions, and then shot the victim twice.

C. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

A significant sentence is necessary to reflect the seriousness of defendant's conduct. The defendant sex trafficked multiple children and used physical violence against those he trafficked, conduct that Congress has described as a "severe forms of trafficking in persons." *United States v. Robinson*, 702 F.3d 22, 29 (2d Cir. 2012). He targeted particularly vulnerable runaway girls. Not only did he require them to have sex with men and provide him with their proceeds, but he even engaged in a sexual act with at least one of them himself.

The Victim Impact Statement of Juvenile-1, who was trafficked by the defendant when she was 14 years old, is a testament to the devastating impact of his actions. After arriving in Virginia, she was quickly "put to work" by the defendant. After watching the defendant physically assault the other minor victim, she was then herself assaulted by that minor victim. While she expresses

optimism for her future trajectory, she also says that the traumatic experiences she endured "will forever be in my memories."

D. The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

The government's requested sentence is needed to specifically deter the defendant and to protect the community from him engaging in further crimes. He has repeatedly hurt innocent victims and sexually exploited children. While his criminal history category is VI, it appears that the longest continuous period of incarceration he has served is approximately three years. Apparently completely undeterred by his past run-ins with the law, he committed the crime bringing him before the Court while on court-ordered periods of good behavior for three different crimes.

Not only that, but after his trafficking victims were apprehended by law enforcement in 2022, the defendant's response was not to stop his illicit conduct, but instead to continue to recruit the undercover officer whom he believed to be an out-of-state minor, telling her he was in danger of being arrested for sex trafficking. When he encountered law enforcement a week later, he responded by attempting to destroy his phone. And then even while incarcerated on his initial state charges, he continued to talk to one of his minor victims, discussing that the other minor victim could take the blame for the offense.

E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While incarcerated, the defendant would benefit from mental health treatment and substance abuse treatment. He would also benefit from vocational training, and has expressed a specific interest in receiving a cosmetology/barber certification.

F. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence of imprisonment for the defendant's crime of conviction is a mandatory minimum of ten years and up to life. 18 U.S.C. § 1591(a)(1) & (b)(2). A term of supervised release is required for a minimum of five years, and may be imposed for life. 18 U.S.C. § 3583(k).

Regarding special assessments, the defendant may be ordered to pay, in addition to the $100 special assessment, the $5,000 special assessment mandated by the Justice for Victims of Trafficking Act of 2015 ("JVTA") for non-indigent defendants, 18 U.S.C. § 3014. However, the defendant appears to be indigent. PSR at 32.

G. The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

While the defendant is the sole defendant in this indictment, his "bottom," Emerita Moore, has pleaded guilty to aiding and abetting transporting an individual to engage in prostitution, in violation of 18 U.S.C. §§ 2421 & 2. Case No. 2:23-cr-47. She is scheduled to be sentenced after Mr. Loftin and faces a statutory maximum term of imprisonment of ten years of imprisonment. *Cf. United States v. Lattimore*, 454 F. App'x 165, 167 (4th Cir. 2011) (noting that "this court, along with the majority of the circuits, has recognized that § 3553(a)(6) is aimed at eliminating national sentencing disparities, not disparities between codefendants").

The government's recommended sentence would be within the advisory guidelines range should the Court sustain the objection regarding acceptance of responsibility. A within-guidelines sentences serves to avoid unwarranted disparities with similarly-situated defendants. *See Gall v. United States*, 552 U.S. 38, 54 (2007) (explaining that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"); *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) ("The purpose of the sentencing

guidelines is to eliminate disparities among sentences nationwide." (internal quotation and citation omitted)); *United States v. Parks*, Criminal Action No. 5:05-CR-00257-KDB-DCK, 2020 WL 6826214, at *3 (W.D.N.C. Nov. 20, 2020) ("One of the goals of the Sentencing Guidelines is to avoid national sentencing disparities amongst similar offenders with similar criminal conduct. *See, e.g.*, *United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006). Thus, the best way to avoid unwarranted sentencing disparities is for the district court to impose a sentence within the guidelines range.").

The government recognizes that "[t]he requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court." *United States v. Sueiro*, 59 F.4th 132, 142 (4th Cir. 2023). *Cf. United States v. Abed*, 3 F.4th 104, 177 (4th Cir. 2021) (cautioning against reliance on statistics, and explaining that such information "hardly presents an apples-to-apples-comparison"). Nonetheless, the government is aware of two recent comparable cases in this division which further demonstrate that the government's recommended sentence is necessary to avoid creating any unwarranted disparities. First, in *United States v. Odums*, No. 2:17-cr-46-AWA, the forty-year-old defendant pleaded guilty to sex trafficking by force, fraud, and coercion. ECF Nos. 26 (plea agreement) & 35 (government position paper). His criminal history category was VI and his total offense level was 33, with a guidelines range of 235 to 293 months. ECF No. 35. Although there was no evidence of trafficking minors, Mr. Odums used violence against an adult victim, Jane Doe 1. ECF No. 27 (statement of facts) ¶ 12. The Court sentenced him to 480 months of imprisonment. ECF No. 43.

Second, in *United States v. McLean*, No. 2:21-cr-50-RAJ, the 54-year-old defendant pleaded guilty to sex trafficking by force, fraud, and coercion. ECF Nos. 41 (plea agreement) &

59 (government position paper). He trafficked both adult and minor victims, and used violence. ECF No. 42 (statement of facts) ¶¶ 1 & 3. His total offense level (after a sustained objection) was 44, and his criminal history category was II, with a guidelines range of life. ECF No. 59. The Court sentenced him to 360 months of imprisonment. ECF No. 61.

H. The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))

In his plea agreement, the defendant agreed that restitution was mandatory, and to the entry of a restitution order for the full amount of the victims' losses. ECF No. 28 ¶ 11. The defendant further agreed that pursuant to 18 U.S.C. § 3663(a)(3), victims of the conduct described in the charging instrument, Statement of Facts, or any related or similar conduct are victims within the meaning of 18 U.S.C. § 2259(c) and are entitled to restitution. *Id.* As of the time of this filing, the government has not received any restitution requests. In an abundance of caution, given the known victims in this case, the government requests that the Court bifurcate restitution pursuant to 18 U.S.C. § 3664(d)(5), which would allow it to consider any requests post-sentencing for a period of 90 days.

## VI. Supervised Release Conditions

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d). In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions, as well as recommended

special conditions, on pages 34 through 39 of the PSR. The government requests that the Court impose all of those conditions.

## VII. Conclusion

For the reasons stated above, the government submits that a sentence of imprisonment of 360 months would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Jessica D. Aber
United States Attorney

By: /s/
E. Rebecca Gantt
Assistant United States Attorney
VSB No. 83180
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on October 19, 2023, I will send an electronic copy of the foregoing to the following:

Kalyn M. Monreal
United States Probation Officer

/s/
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov