IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                                                   Case No.: 2:23-cr-44

DENZEL AKEEM LOFTIN,

**OBJECTION TO PRESENTENCE INVESTIGATION REPORT AND
POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS**

COMES NOW, the Defendant, Denzel Akeem Loftin ("Denzel"), by and through the undersigned counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the United States Sentencing Guidelines ("U.S.S.G") (including Policy Statements) and this Court's Sentencing Procedures Order entered on June 26, 2023, and respectfully submits the following Objection to the Presentence Investigation Report and Position With Respect to the Sentencing Factors set forth in 18 United States Code §3553(a) and respectfully states as follows:

I.      **INTRODUCTION AND PROCEDURAL BACKGROUND**

The proceedings involving Denzel originated in the Juvenile and Domestic Relations Court for the City of Chesapeake in November 2022, but was *nolle prossed* on February 8, 2023, in favor of federal prosecution. The United States filed a Criminal Complaint in this Court on February 7, 2023, alleging violations of 18 U.S.C. §§ 1591(a)(1), (b)(2) & 2, Attempted Sex Trafficking of a Minor, and 18 U.S.C. § 1591(d), Obstruction of a Sex Trafficking Investigation. On February 9, 2023, Denzel made his initial appearance before the United States District Court for the Eastern District of Virginia, and a detention hearing was scheduled for February 14, 2023. The undersigned was appointed on February 10, 2023. ECF No.: 6. A detention hearing was held on February 14, 2023, before Magistrate Judge Krask. On advice of counsel, Denzel

waived his right to an immediate detention hearing and was remanded and held for Grand Jury proceedings. The undersigned and counsel for the United States discussed the charges and discovery, and in an effort to facilitate further discussion, a Consent Motion for Extension of Time and Consent Order allowing an extension of time to indict was filed on March 6, 2023. ECF Nos.: 12-13. The parties engaged in discussions regarding a pre-indictment plea, but because of the volume of discovery, disputed facts and need for a psychological evaluation, additional time was required by the defense.

On April 11, 2023, a five-count Indictment was filed in this Court charging Denzel with the following: Count 1 for an alleged violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) & 2, Sex Trafficking by Force, Fraud and Coercion; Count 2 for an alleged violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) & 2, Sex Trafficking of a Minor; Count 3 for an alleged violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) & 2, Attempted Sex Trafficking of a Minor; Count 4 for an alleged violation of 18 U.S.C. § 2251(a), Production of a Visual Depiction of Minor Engaged in Sexually Explicit Conduct; and Count 5 for an alleged violation of 18 U.S.C. § 1591(d), Obstruction of a Sex Trafficking Investigation.

On June 26, 2023, pursuant to Federal Rule of Criminal Procedure 11, Denzel appeared before the Honorable Douglas E. Miller, a United States Magistrate Judge and pled guilty to Count 2, Sex Trafficking of a Minor violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) & 2. Denzel is scheduled to be sentenced by this Honorable Court on November 2, 2023. In this pleading, the defense states Denzel's position regarding the sentencing factors set forth in United States Code §3553(a).

## II.  SENTENCING AND GUIDELINE PROVISIONS

Pursuant to his guilty plea and crime of conviction, Denzel faces a statutory minimum of ten (10) years for his conviction of Count 2, Sex Trafficking of a Minor, up to life imprisonment, and a mandatory five (5) year period of supervised release. Denzel was interviewed by the United States Probation Office on August 3, 2023, and the PSR was prepared, and filed with this Court on September 27, 2023. ECF No.: 33. An Addendum to the PSR was filed on October 18, 2023. ECF No.: 34.

The PSR assigns a Base Offense Level of 30 and includes the following enhancements: (a) unduly influencing a minor to engage in prohibited sexual conduct (+2) pursuant to USSG §2G1.3(a)(2); (b) use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor (+2) pursuant to USSG §2G1.3(b)(3)(B); (c) commission of a sex act or sexual contact (+2) pursuant to USSG §2G1.3(b)(4)(A). Denzel also received a four-point enhancement for role in the offense (+4) pursuant to USSG §3B1.1(a) and an enhancement for obstruction of justice pursuant to USSG §3C1.1, resulting in a net offense level of 42.

In terms of Criminal History, Denzel's adult criminal convictions result in a subtotal score of fourteen (14). The U.S. Probation Office erroneously added two points for the commission of the instant offense while under a previous justice sentence, yielding a criminal history score of fifteen (15), but this was modified to reflect that only one point should have been added. ECF Nos.: 33-34, see ¶72. As a result, Denzel falls into Category VI on the United States Sentencing Guideline sentencing table.

At a total offense level of 45 and a Criminal History Category VI, under the Sentencing Guidelines, the United States Probation Office has indicated that the appropriate advisory range for Denzel is Life in prison, plus five (5) years of supervised release. Denzel is requesting a

sentence below his advisory range through a variance. For the reasons discussed below, and pursuant to paragraph 7 (5) of this Court's Sentencing Procedures Order (ECF No.: 30), Denzel is asking this honorable Court to sentence him to the statutory minimum of ten (10) years, followed by five (5) years of Supervised Release. The defense does not intend to call any witnesses, but it is anticipated that Denzel will elocute at the time of the sentencing hearing.

### III.    OBJECTION TO THE PSR

The defense initially raised multiple objections to the PSR, which are documented in the Addendum filed by the U.S. Probation Office. ECF No.: 34. However, after discussing the same with the United States, reviewing the law and the facts, the defense has withdrawn the objection to the 4-level role enhancement pursuant to USSG §3B1.1(a) and the pseudo counts pursuant to USSG §1B1.2. Both the United States and the defense have lodged an objection to the U.S. Probation Office's denial of the acceptance of responsibility pursuant to USSG §3E1.1.

According to the U.S. Probation Office, although Denzel freely admitted guilt in court at the time of his guilty plea, admitted his involvement in the offense to the Probation Officer, and stated that he regrets his involvement in the offense and provided the following statement: "I've made some terrible decisions, and I'm trying to be a better person because of it," he "has not acted in a manner that is consistent with acceptance of responsibility." ECF No.: 22-23. The PSR and its Addendum recite that Application Note 4 of USSG 3E1.1 provides that conduct resulting in an enhancement under USSG 3C1.1 ordinarily indicates that the Defendant has not accepted responsibility for his criminal conduct. The PSR relies on the fact that Denzel "intentionally attempted to destroy his cellular telephone by smashing it into the ground at the time of his arrest" and admitted to the same. ECF No.: 22.

A.      *Legal Standard*

Pursuant to USSG §3E1.1, Acceptance of Responsibility, provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels. The Application Note suggests that in determining whether a defendant qualifies, appropriate considerations include factors such as truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); post-offense rehabilitative efforts and the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. Id. at ¶1. The Application Note also provides that

> "entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a)."

Id. at ¶3.

Accordingly, under USSG §3E1.1(a), a two-level reduction in a defendant's offense level applies if "the defendant clearly demonstrates acceptance of responsibility for his offense" although the defendant bears the burden of demonstrating, by a preponderance of the evidence, "that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." United States v. Glover, 2023 U.S. App. LEXIS 15477 (citing United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007).

B.      *Argument*

In this case, there are several key facts for the Court to consider. First, and foremost, the conduct that resulted in application of the enhancement for obstruction of justice occurred at the time of Denzel's arrest, prior to any discussions with counsel, and before any advice of counsel –

5

and acceptance of this advice. Denzel has engaged in post-offense rehabilitative efforts, including undergoing a psychological evaluation and being cooperative during the process. The defense had Denzel evaluated by Dr. Alana Hollins, a licensed clinical psychologist. Her evaluation and resulting report provides unique insight into Denzel. The defense respectfully submits that this information is very relevant to this Court's sentencing determination.[1] Further, since his arrest, Denzel has been cooperative and forthcoming, advising the government of his intention to plead guilty even pre-indictment, and once indicted, within a very short time frame. A guilty plea hearing was conducted within 56 calendar days of the date of Denzel's arraignment. Finally, Denzel requested a voluntarily debrief by the federal agents, which occurred on May 18, 2023.

The United States has also lodged an objection to the U.S. Probation Office's decision, reporting that Denzel's subsequent acceptance of responsibility after being federally charged, along with the fact that the obstruction pre-dated federal charge should be considered. These factors should clearly suggest to the Court that Denzel has met his burden of demonstrating, by a preponderance of the evidence, that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct.

### IV.     THE APPROPRIATE SENTENCE IN THIS CASE

As this Court is well aware, the overriding principle and basic mandate of 18 U.S.C. §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2). This requirement is not just another factor to be considered along with the others set forth in Section 3553(a), but instead, "sufficient, but not greater than necessary" sets an independent limit on the sentence.

---

[1] The defense intends to file Dr. Hollings's report under seal once a motion for leave to file the report under seal is granted. A copy of the report has been provided to the Assistant United States Attorney and Probation Officer.

Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing. The law must "tak[e] into account the real conduct and circumstances involved in sentencing" as well as the defendant's personal history and characteristics. Gall v. United States, 552 U.S. 38, 54 (2007); 18 U.S.C. § 3553(a)(1). The Court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id. at 52.

As this Court has observed, in calculating the advisory guideline sentence, the guidelines reject the consideration of many of the critical factors that the Court is required to consider pursuant to 18 U.S.C. §3553 (a). U.S. v. Cherry, 366 F. Supp. 2d 372, 378 (E.D. Va. 2005) (citing United States v. Ranum, 353 F. Supp. 2d 984, 986-87 (E.D. Wis. 2005)). Under the guidelines, the Court is generally prohibited from considering the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. Id. However, in Cherry, this Court recognized that the guidelines' prohibition of considering these factors "cannot be squared with the § 3553(a)(1) requirement that the court evaluate the 'history and characteristics' of the defendant" and that "in some cases the guidelines will clash with § 3553(a)'s primary directive: to "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing. Id. In fact, all of these factors are outlined in great detail in the very report that the Court considers when sentencing a defendant.

    A.    <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of this offense are very serious, and disturbing. Generally speaking, traffickers recruit, harbor, transport, provide and/or obtain people for the purpose of

7

compelling labor and/or commercial sexual exploitation. They use force, fraud or coercion to exact work and profit from others. Trafficking is commonplace across not just the United States, but the world, and the demand for human sex trafficking is primarily fueled by pornography and the porn industry.[2] The volume of sex trafficking is abhorrent. According to the International Labour Organization (ILO), in a study[3] completed in 2017, there were 24.9 million victims of human trafficking around the world. This figure includes both sex trafficking, or commercial sexual exploitation, and forced labor exploitation, both in the private sector and state-imposed. Of this global number, the ILO estimated there were 4.8 million sex trafficking victims experiencing commercial sexual exploitation around the world in 2016. This category includes any adults who involuntarily participate in the sex industry and children experiencing commercial sexual exploitation. 3.8 million victims were adults, and 1 million were children. Globally, 99% of victims were women and girls. The study also found that trafficking happens in every region of the world. Why is this the case? Human trafficking is a market-driven criminal industry that is based on the principles of supply and demand, just like drugs or arms trafficking. Many factors make children and adults vulnerable to human trafficking, but trafficking does not exist solely because many people are vulnerable to exploitation. Instead, human trafficking is fueled by a demand for cheap labor, services, and for commercial sex. The desire to profit from the existing demand is also primary factor.[4] The reasons for Denzel's

---

[2] https://fightthenewdrug.org/who-are-sex-traffickers/

[3] https://traffickinginstitute.org/breaking-down-global-estimates-of-human-trafficking-human-trafficking-awareness-month-2022/#:~:text=24.9%20million%20victims%20of%20human%20trafficking&text=The%2024.9%20million%20figure%20includes,private%20sector%20and%20state%2Dimposed

[4] https://humantraffickinghotline.org/en/type-trafficking/human-trafficking#:~:text=Instead%2C%20human%20trafficking%20is%20fueled,profit%20from%20the%20existing%20demand

involvement are not entirely clear, but he remains adamant that Emerita Moore, a defendant in a related case (see PSR at p. 1) ("Ms. Moore") introduced him to the trade, and that he met her online while she was residing in Suffolk, Virginia in the Fall of 2021, after Denzel's release from the Virginia Department of Corrections on September 7, 2021. The two became romantically involved, and the situation escalated. As discussed below, Denzel's upbringing and lack of guidance clearly contributed to his criminal conduct, for which he has acknowledged and accepted responsibility.

      B.      <u>Characteristics of the Defendant</u>

Denzel is 33 years old. Although he has family in the immediate area, and two daughters, he lacks family and emotional support. Sadly, he has spent a significant amount of his young life, in and out of trouble. He has a serious criminal history, which started at a very young age, and was heavily influenced by his relationship with his mother, Dianna Loftin. Quite candidly, Denzel's life has been anything but easy or idyllic. His parents separated shortly after his birth, and Denzel's paternal grandmother assumed the role of caretaker, while his own mother, who was a drug addict and ran the streets, flitted in and out of his life. His grandfather had anger issues, and lashed out frequently at Denzel, often beating him with a belt or his hand, and leaving marks and bruises. At the age of 13, Denzel moved in with his father, which was not an improvement, by any account. His father was verbally abusive, calling Denzel demeaning names and also used corporal punishment which was described as "borderline abusive."

Denzel struggled academically and was diagnosed with attention deficit hyperactivity disorder (ADHD) in elementary school. He dropped out during his last year of high school, but obtained his GED. Denzel's involvement with law enforcement started at a young age, and his first long period of incarceration occurred when he was only 22. Following his release (after being in custody for six years), Denzel struggled to adjust and cope. Six months after he was

9

released from custody, his own stepbrother shot him, causing hospitalization and the wearing of a full arm cast for several months. Drugs were a prominent part of Denzel's life, and have been a major issue for his own wellbeing, and for those around him, and an inappropriate coping mechanism.

Perhaps even more important for the Court's consideration is Denzel's mental health. He has been depressed for most of his life, and in September 2022, Denzel attempted suicide by hanging. He was transferred to Eastern State Hospital where he remained hospitalized for two weeks. According to Denzel, he continues to take the medications that were prescribed for him (Lexapro and Remeron), but finds them to be minimally effective. Dr. Hollings has opined that Denzel suffers from Major Depressive Disorder, Posttraumatic Stress Disorder (PTSD), ADHD, and a moderate alcohol and cocaine use disorder, which is in remission only because of his current controlled environment. June 6, 2023 Report of Dr. Alana Hollings at p. 5. According to Dr. Hollings, Denzel did not receive consistent love, guidance, or support from his parents, which affected him in negative ways and has continued to plague him as an adult. As a result, he turned to unhealthy means (e.g., criminal behavior, substance abuse) as a way of coping with his pain and emotional distress. These chronic mental health issues, poor anger management, and insufficient coping skills have contributed to impaired decision making and poor impulse control, including the circumstances which bring him before this Court. Id. at p. 6. These issues need to be addressed, and Denzel knows it. He would benefit from a myriad of programs, treatment, and counseling, including drug and alcohol treatment, anger management, psychological services and education.

      C.      <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, To Afford Adequate Deterrence and to Protect the Public from Further Crimes and The Need to Avoid Sentencing Disparities</u>

The United States has requested that this Court consider a sentence of 30 years, (360 months) for Denzel, and outlined the basis for this request, including a comparison of the defendant in United States v. McLean, 2:21-cr-50-RAJ, who received a sentence of 360 months. In the McLean case, although the defendant had a lower criminal history, the court also considered the fact that the defendant recruited his codefendant, who was 16 or 17 years old, to be sex trafficked, and that at that time - in 2012 - he controlled a group of approximately five or six girls and women, and until his arrest in 2020, the defendant routinely recruited and maintained a group of women and girls that he sex trafficked. Id. ECF No. 59. The defendant controlled the prices for commercial sex, provided condoms to the victims, and took sexually provocative photos of the women and girls for commercial sex advertisements. Id. He maintained control over the women and girls he sex trafficked through several means, including physical violence, inflicted physical abuse with tools including a baseball bat and paddles, and made the other women and girls watch the abuse, and he also impregnated at least one member of his sex trafficking group. The circumstances in this case, while repugnant, are not nearly as egregious. The time frame in this case is much more limited, as are the victims, and the overall conduct.

To be clear, a sentence of any length will also be sufficient to deter Denzel from engaging in further criminal activity and to deter others who contemplate committing this serious crime. He does not need to serve life in prison, or anywhere close to it. According to the United States Social Security Administration's Life Expectancy Table, a male at age 33 would be expected to live another 48 years. There are multiple factors which may heavily influence this figure. Suffice it to say, almost half of Denzel's life is effectively over. All things considered (including the good time ratio), a sentence of even 30 years would result in Denzel's release at between age 58-60, beyond his potential productive employment years. At the present, Denzel

has no appreciable employment skills, based on his criminal history and as evidenced by his employment history. He has expressed a sincere interest in learning a trade, and becoming a productive member of society upon his release. He can achieve this goal in the Bureau of Prisons. A sentence between ten and thirty years will be more than sufficient to protect the public and to achieve deterrence for a variety of reasons, including Denzel's mental health struggles. Denzel has two young daughters, ages 13 and less than a year, and he would like to be a part of these young women's lives before they lose sight of the family connection.

Research indicates increases in the severity of punishment are less likely than the certainty of punishment to produce deterrent benefits. See Valier Wright, DETERRENCE IN CRIMINAL JUSTICE, EVALUATING CERTAINTY VS. SEVERITY OF PUNISHMENT, THE SENTENCING PROJECT, at 1 (Nov. 2010) (emphasis in the original) [hereinafter Sentencing Project Report]; see also Anthony N. Doob & Cheryl Marie Webster, Sentence Severity and Crime: Accepting the Null HYPOTHESIS, 30 Crime & Justice 143, 146 (2003) ("harsh sentences do not deter"). Thus, sentencing Denzel to an overly lengthy period of incarceration would not have a higher effect of deterring him from crimes in the future. Similarly, more severe sentences fail to enhance public safety. See generally Sentencing Project Report. Contrary to ideology that "putting people in prison for years or even decades should prevent offenders from re-offending by incapacitating them and/or deterring would-be-offenders from committing crimes[,]" studies fail to support these assertions. Id. at 6. A series of studies, examining the public safety effects of imposing longer periods of imprisonment, reveal that longer prison sentences were associated with a three percent increase in recidivism. Id. A significant sentence will not serve to benefit Denzel or the community.

## IV. CONCLUSION

Giving consideration to the facts and factors above, Denzel respectfully prays that this Court consider a sentence of the statutory minimum of ten (10) years. Despite the seriousness of his crime, imposing a sentence of the statutory minimum would more than adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for Denzel's conduct, along with adequately deterring future wrongful conduct.

Date: October 19, 2023

Respectfully Submitted,                                  Denzel Akeem Loftin


By: _____/s/_____
    Mary T. Morgan, Esq.
    Virginia State Bar No.: 44955
    *Counsel for Denzel Akeem Loftin*
    INFINITY LAW GROUP, PLC
    4646 Princess Anne Road, Suite 104
    Virginia Beach, Virginia 23462
    Telephone: (757) 609-2702
    Facsimile: (866) 212-1310
    Email: mary@infinitylawva.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to all counsel of record, including:

Emily R. Gantt, Esq.
Assistant U.S. Attorney
UNITED STATES ATTORNEYS OFFICE
101 West Main Street
Suite 8000
Norfolk, Virginia 23510
(757) 441-6331
rebecca.gantt@usdoj.gov

I FURTHER CERTIFY that I will send the document by electronic mail to the following non-filing user:

Kalyn Monreal
United States Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510
Telephone: (757) 222-7312
kalyn_monreal@vaep.uscourts.gov

_____/s/_____
Mary T. Morgan, Esq.
Virginia State Bar No.: 44955
*Counsel for Denzel Akeem Loftin*
INFINITY LAW GROUP, PLC
4646 Princess Anne Road, Suite 104
Virginia Beach, Virginia 23462
Telephone: (757) 609-2702
Facsimile: (866) 212-1310
Email: mary@infinitylawva.com